UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **FRANCIS PUGH** | * | **CIVIL ACTION NO. 06-0873** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Francis J. Pugh, born October 31, 1961, filed an application for supplemental security income on June 8, 2004, alleging disability as of March 1, 2003, due to diabetes mellitus and low back pain.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated July 21, 2004 to July 21, 2005**. Claimant was seen for diabetes. On March 31, 2003, her diabetes was uncontrolled. (Tr. 150). Her hypertension was well-controlled.

On May 22, 2003, claimant complained of low back pain radiating down into her right thigh. (Tr. 144). The assessment was low back pain with radiculopathy. A lumbar spine study was normal. (Tr. 141). She was prescribed Neurontin. (Tr. 140).

On June 3, 2003, claimant's diabetes had improved, and her back pain was better. (Tr. 135). She complained of numbness and tingling in her feet. The assessment was controlled Type 2 diabetes mellitus and neuropathy. She was prescribed Accupril for blood pressure. (Tr. 132).

On August 6, 2003, claimant complained of lower back pain radiating to her legs, and tingling in her feet. (Tr. 130). The assessment was diabetes mellitus and diabetic neuropathy. She was prescribed Avandia.

On November 12, 2003, claimant complained of back pain and muscle spasm. (Tr. 108). She had no x-ray evidence of active cardiopulmonary disease. (Tr. 107). Lumbar spine x-rays were normal. (Tr. 106). The assessment was diabetes mellitus,

fairly controlled. (Tr. 108).

On March 4, 2004, claimant complained of back, neck, and leg pain. (Tr. 99). The assessment was diabetic neuropathy. (Tr. 100). She was prescribed Darvocet for more severe pain, and given a refill for Elavil. (Tr. 101).

Claimant's diabetes was uncontrolled on March 11, 2004. (Tr. 95). She was started on insulin, and prescribed Ultram for pain. On April 7, 2004, her diabetes was improving. (Tr. 94). Her diabetes was much improved on June 10, 2004. (Tr. 88).

**(2) Consultative Examination by Dr. Ross Klingsberg dated July 10, 2004**. Claimant had a history of low back pain radiating into her stomach and legs, leg numbness, diabetes, and headaches four times a week. (Tr. 151). She stated that she could dress and feed herself, stand for 15 minutes at a time and over 2 hours in an 8-hour period, walk one block before having low back and leg pain, carry about 10 pounds, drive a car, and do household chores such as sweeping, mopping, vacuuming, cooking, and doing the dishes. Her medications included Propoxyphene, Tramadol, Amitriptypline, Avandemet, Cyclobenzaprine, Quinapril, Albuterol, Lantus, Aspirin, Lipitor, Humulin insulin, and Neurontin.

On examination, claimant was 67 inches tall and weighed 156 pounds. (Tr. 152). Her blood pressure was 107/65. She ambulated with no difficulty, and was able to get on and off the exam table and up and out of a chair with no problem.

3

In the spine and extremities, claimant had full pulses. Her feet had no skin breakdown, lacerations, calluses, or ulcers. Her gait was normal. Grip strength was 5/5. She had no muscle atrophy or joint deformity.

Claimant's range of motion was normal in all joints. Mentally, she had no signs of nervousness or agitation. (Tr. 153). Motor was 5/5 in all muscle groups. She had no sensory deficits. Vibratory sense in the feet was normal.

Cerebellar exam was normal. Cranial nerves were intact. Deep tendon reflexes were symmetric and non-pathologic.

Dr. Klingsberg's impressions were diabetes, sub-optimal care by report, but no hospitalizations for ketoacidosis or hypoglycemia; low back pain, with no evidence of nerve impingement, sciatic, neoplastic, or infectious process, and leg pain consistent with diabetic neuropathy, but no evidence of nerve degeneration. He opined that she might be somewhat over-medicated with narcotics. He determined that she had preserved capacity to sit, stand, walk, lift, hear, and speak, and had no deficit in her ability to handle objects.

**(3) Residual Functional Capacity ("RFC") Assessment dated July 21, 2004**. The examiner determined that claimant could lift 50 pounds occasionally and 25 pounds frequently; could stand, walk, and sit about 6 hours in an 8-hour workday, and had unlimited push/pull ability. (Tr. 155). She was able to drive a car, cook, do

household chores, and care for her personal hygiene.  (Tr. 159).

**(4) Records from UMC dated July 21, 2004 to July 21, 2005**.  On July 21, 2004, claimant complained of occasional worsening neuropathy symptoms. (Tr. 193). Her diabetes was controlled.  She was instructed to take more Neurontin when her symptoms increased.

On September 21, 2004, claimant complained of leg pain and difficulty in sleeping.  (Tr. 186).   The assessment was insomnia, for which her Elavil was increased.  Her diabetes was controlled at her next visit.  (Tr. 184).

On April 20, 2005, claimant had no complaints.  (Tr. 169).  Her diabetes was controlled.  She was assessed with hyperlipidemia/hypertriglyceridemia. Her doctor instructed her to stop smoking.

An eye exam by Dr. Paul Azar, Jr. dated April 20, 2005, revealed no diabetic retinopathy.  (Tr. 168).

**(5) Consultative Examination by Dr. Kenneth A. Ritter, Jr. dated October 3, 2005**.  Claimant complained of diabetes, for which she rarely checked her glucose levels; a lung problem; occasional headaches and nausea; leg and feet numbness and burning, and left shoulder aches.  (Tr. 194).  She used a walker frequently.  She smoked one-half pack of cigarettes per day.  Her medications included Glucophage, Avandia, Lantus insulin, Humalog insulin, Neurontin, Accupril, Amitriptyline,

Lipitor, Aspirin, and a Ventolin inhaler as needed.

On examination, claimant was 5 feet 7 inches tall and weighed 162 pounds. (Tr. 195). Her blood pressure was 140/88. Her visual acuity without glasses was 20/20.

Claimant's lungs were clear. Her heart had sinus rhythm without a murmur or gallop.

On extremities examination, claimant had no ankle swelling. She was able to ambulate fairly normally without her walker, and had no obvious limp. Her DP pulses were 1+ and equal. She had normal range of motion in her upper and lower extremities. Neurologically, claimant was intact with normal DTRs, strength, and sensation.

Dr. Ritter's impressions were adult diabetes under unknown control, for which she very rarely checked her glucose levels; ongoing significant cigarette use; hypertension under good control with medications, and at least some degree of diabetic neuropathy causing her to have episodic burning in her feet and numbness in her legs.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Ritter found that claimant could lift/carry 25 pounds occasionally and frequently. (Tr. 197). He determined that her ability to stand, walk, sit, and push/pull

were not affected by her impairment.  (Tr. 197-98).

Claimant could perform all postural activities frequently.  She had unlimited manipulative and visual/communicative functions.  (Tr. 199).  She had no environmental limitations.  (Tr. 200).

**(6) Medical Assessment by Dr. Muthuswamy from UMC dated November 1, 2005**.  Dr. Muthuswamy determined that claimant could frequently lift less than 10 pounds, occasionally lift 10 pounds, rarely lift 20 pounds, and never lift 50 pounds.  (Tr. 201).  He found that she could stand for 20 minutes.  He noted that she had continuous pain in her legs, and the her pain worsened if she walked more than two blocks.  She could sit for 30 minutes at a time, and at least 4 to 6 hours in an 8-hour working day.

Dr. Muthuswamy stated that claimant was limited as to reaching and feeling.  (Tr. 202).  She required protective footwear due to advanced peripheral neuropathy.  She needed to take unscheduled breaks two to three times a day for 10 to 15 minutes each because of pain and numbness in the lower extremities.  He found that she would need to miss work or leave early less than twice a month.  He noted no side effects from her medications.

**(7) Claimant's Administrative Hearing Testimony**.  At the hearing on August 8, 2005, claimant was 43 years old.  (Tr. 208).  She had a GED, and one

semester of college. She had past work experience as a nurse assistant and bartender. (Tr. 209).

Claimant testified that she had last worked in January of 2004 because of diabetic neuropathy in her legs and feet. (Tr. 208, 210). She also complained of pain from her waist down due to neuropathy. (Tr. 213). She stated that she was taking 13 medications, including pain medicine, insulin shots, and diabetes drugs. (Tr. 210, 213, 215).

Claimant reported that her pain worsened around her menstrual cycle. (Tr. 214). She stated that when her pain was elevated, she was unable to do any activities. She testified that these pain episodes happened about once a month, and lasted about five days.

Regarding activities, claimant testified that she drove, grocery shopped, groomed herself, and took out the garbage. (Tr. 212). She could sit for about 30 minutes before she needed to move around. She could stand for about 15 minutes until her legs hurt and her feet swelled. (Tr. 213). She could walk about half a block before she had to rest. She could bend and squat most of the time.

**(8) The ALJ's findings are entitled to deference**. Claimant argues that: (1) the ALJ's residual functional capacity assessment was erroneous and unsupported by the evidence, specifically the treating physician's opinion, and (2) the ALJ erred in

8

failing to have a vocational expert at the hearing.

As to the first argument, claimant argues that the ALJ erred in finding that she could perform medium work. (rec. doc. 8, p. 2). Specifically, she asserts that the ALJ erred in rejecting the opinion of her treating physician, Dr. Muthuswamy, setting forth her limitations from diabetes and diabetic neuropathy. (rec. doc. 8, p. 3).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence*." (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ specifically considered all of the treating physicians' opinions, including the medical assessment by Dr. Muthuswamy, in assessing claimant's residual functional capacity. (Tr. 21). In fact, the ALJ cited Dr. Muthuswamy's opinion that claimant could stand for 20 minutes, had no limitations on her ability to stand and walk, and could sit for 4 to 6 hours out of an 8-hour workday. (Tr. 201). He further referenced Dr. Muthuswamy's finding that claimant would require breaks throughout the workday, which, the ALJ noted, would normally be allowed within the working environment. The ALJ concluded that there was no diagnostic evidence indicating that claimant's condition was so severe that she would need repeated unscheduled breaks or would have to take off from work for extended periods.

The medical records from claimant's treating physicians at UMC, as well as the consultative examiner, Dr. Ritter, support the ALJ's finding that claimant was capable of performing medium work. While claimant had diabetes, she reported to Dr. Ritter that she "rarely" checked her glucose levels. (Tr. 194). In any event, the records indicate that her condition was controllable with medication. (Tr. 135, 169, 184, 193). If an impairment reasonably can be remedied or controlled by medication, treatment or therapy, it cannot serve as a basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th

Cir. 1987).

Further, both of the consultative examiners determined that claimant had no limitations that would render her disabled. Dr. Klingsberg opined that claimant had the capacity to sit, stand, walk, lift, hear, and speak, and had no deficit in her ability to handle objects. (Tr. 153). Dr. Ritter found that claimant could lift/carry 25 pounds occasionally and frequently; had no limitations as to standing, walking, sitting, and pushing/pulling; could frequently perform all postural activities, and had no manipulative and visual/communicative functions. (Tr. 197-99). To the extent that these opinions conflicted with the brief and conclusory medical source statement by Dr. Muthuswamy, the ALJ was entitled to give them greater weight.

It is well established that conflicts in the evidence are for the Commissioner and not the courts to resolve. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Additionally, none of claimant's physicians, including Dr. Muthuswamy, had indicated that her impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Accordingly, the ALJ's finding regarding claimant's ability to perform medium work is entitled to deference.

Next, claimant asserts that the ALJ failed to properly consider the side effects of her medications. (rec. doc. 8, pp. 5-6). However, the record does not indicate that claimant reported any side effects to her physicians. *See Salazar v. Chater*, 1995 WL 783347, *5 (5th Cir. 1995) ("[i]t is logical to assume that if the claimant were suffering significantly from any side affects [sic], the claimant would have complained to his treating physician, yet he has not done so."). In fact, Dr. Muthuswamy noted no side effects from her medications. (Tr. 202). Thus, this argument lacks merit.

Finally, claimant argues that the ALJ erred in failing to have a vocational expert at the hearing. (rec. doc. 8, pp. 6-7). Specifically, claimant argues that the ALJ improperly relied on the Medical-Vocational Guidelines to conclude that she had the residual functional capacity to perform medium work because of her non-exertional limitations. However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments or her *non-exertional impairments do not significantly affect [her] residual functional capacity*. (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404,

Subpart P, Appendix 2, Section 200.00.  Here, the ALJ determined that claimant's non-exertional impairments did not significantly affect her residual functional capacity.  (Tr. 22).  He found that claimant met Rule 203.28 of the Medical-Vocational Guidelines, which directs a finding of not disabled for a claimant who is a younger individual and a high school graduate or more with unskilled or no previous work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 203.28.  As the claimant meets these criteria, the ALJ's reliance on the Medical-Vocational Guidelines is entitled to deference.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN**

**(10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed June 25, 2007, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE